**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN & JANE, LLC, Plaintiff, | ) | |
| v. | ) | Civil Action No. 24-cv-11508-PBS |
| RUSSELL ISABEL, Defendant. | ) | |

**MEMORANDUM AND ORDER**

October 14, 2026

Saris, J.

**INTRODUCTION**

In this action, Plaintiff John & Jane, LLC ("J&J"), the owner of a scallop fishing vessel, alleged that Defendant Russell Isabel, who served as the master aboard the vessel on a voyage in August 2022, breached their contract by failing to indemnify J&J in connection with an assessment imposed by the National Oceanic and Atmospheric Administration ("NOAA") after Isabel harvested scallops in an area forbidden under federal law. The Court previously granted summary judgment to J&J on its breach of contract claim, see John & Jane, LLC v. Isabel, 822 F. Supp. 3d 195, 208 (D. Mass. 2026), appeal dismissed, No. 26-1515 (1st Cir. July 22, 2026), and entered judgment in the amount of $40,651.25, see Dkt. 55. Citing a fee-shifting provision in the contract, J&J

now moves for an award of $56,173.79 in attorney's fees and expenses under Federal Rule of Civil Procedure 54(d). After review of the parties' briefing and the record, the Court **ALLOWS** J&J's motion for attorney's fees and expenses (Dkt. 58) in the amount of $33,624.00 in fees and $2,283.92 in expenses.

## DISCUSSION

J&J requests attorney's fees and expenses under the following provision in its binding contract with Isabel:

> If it shall be necessary for either the Owner or Master to employ an attorney to enforce its rights pursuant to their Agreement because of default of the other party, the defaulting party, as finally determined in any settlement, judgement [sic], or arbitration award related to such default, shall reimburse the non-defaulting party for reasonable attorney's fees and expenses.

Dkt. 1-1 ¶ 13. Isabel does not dispute that he is a "defaulting party" as determined by the Court's final judgment in J&J's favor on its breach of contract claim. The fees and expenses J&J seeks to recoup under this provision are as follows:

| Timekeeper | Billed Hours | Hourly Rate | Requested Amount |
|---|---|---|---|
| Samuel P. Blatchley | 58.70 | $300.00 | $17,610.00 |
| Thomas L. Harshaw | 115.30 | $250.00 | $28,825.00 |
| "VCR" | 5.90 | $300.00 | $1,770.00 |
| "LMH" | 3.60 | $165.00 | $594.00 |
| "RLF" (Law Clerk) | 3.30 | $195.00 | $643.50 |
| "BTS" | 1.30 | $250.00 | $325.00 |
| "RJK" (Law Clerk) | 3.50 | $195.00 | $682.50 |
| "CJL" (Law Clerk) | 10.20 | $210.00 | $2,142.00 |
| "CCB" (Law Clerk) | 1.20 | $210.00 | $252.00 |
| "TAH" | 2.75 | $210.00 | $577.50 |
| **TOTAL ATTORNEY'S FEES** | | | **$53,421.50** |

| Expense Type | Requested Amount |
| --- | --- |
| Filing fee | $405.00 |
| E-Discovery Management | $270.00 |
| Westlaw fees | $1,851.15 |
| Delivery fees | $226.14 |
| **TOTAL EXPENSES** | **$2,752.29** |
| **TOTAL FEES & EXPENSES** | **$56,173.79** |

The Court first addresses attorney's fees before turning to the issue of expenses.

## I. Attorney's Fees

As an initial matter, the Court summarily rejects Isabel's frivolous argument that it cannot award attorney's fees because no statute authorizes fee-shifting in this case. Courts may award attorney's fees when, as here, a contract provides for fee-shifting. See Baker Botts L.L.P. v. ASARCO LLC, 576 U.S. 121, 126 (2015) (explaining that under the American Rule, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise" (emphasis added) (quoting Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 253 (2010))).

The parties' contract entitles J&J to its "reasonable attorney's fees." Dkt. 1-1 ¶ 13. Courts typically use the lodestar method to calculate reasonable attorney's fees. See García v. State Ins. Fund Corp., 169 F.4th 13, 27 (1st Cir. 2026). Under this method, the "court 'multipl[ies] the number of hours productively spent by a reasonable hourly rate to calculate a base figure.'" Id. (alteration in original) (quoting Torres-Rivera v. O'Neill-

Cancel, 524 F.3d 331, 336 (1st Cir. 2008)). The court then "may adjust the amount upward or downward if circumstances warrant." Id. Ultimately, the "task in fashioning a reasonable fee . . . 'is to do rough justice, not to achieve auditing perfection.'" Pérez-Sosa v. Garland, 22 F.4th 312, 322 (1st Cir. 2022) (quoting Fox v. Vice, 563 U.S. 826, 838 (2011)).

**A. Hourly Rates**

The Court starts with the hourly rates. A reasonable hourly rate "is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." Id. at 321 (quoting Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps. v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014)). To determine this benchmark, "courts look to a constellation of factors, including the rate that the particular attorney 'actually charges to clients in the ordinary course of [his] practice' and 'data evidencing the prevailing market rate for counsel of comparable skill.'" Id. at 325 (quoting Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 16 (1st Cir. 2011)). The party seeking fees bears "the burden of establishing the prevailing hourly rate (or schedule of rates) in the community for the performance of similar legal services by comparably credentialled counsel." Id. (quoting Hutchinson, 636 F.3d at 16).

Two attorneys, Samuel P. Blatchley and Thomas L. Harshaw, billed most of the fees sought by J&J. Attorney Blatchley, who has nineteen years of experience in maritime law and ordinarily charged an hourly rate of $450.00, charged $300.00 per hour for work billed to this matter. Attorney Harshaw, an associate who worked on this matter beginning in his first year of practice, charged $250.00 per hour and did not increase his rate during the pendency of the case even though his firm now charges $355.00 per hour for his time. In support of these rates, J&J submitted declarations from Attorneys Blatchley and Harshaw attesting to their rates' reasonableness. J&J also submitted an order from 2016 approving a $300.00 hourly rate for Blatchley as an associate and hourly rates of $350.00 and $475.00 for partners for maritime-related work in a bankruptcy matter in Rhode Island.

Given their relative positions and levels of experience, the Court finds that Attorney Blatchley's and Attorney Harshaw's hourly rates are reasonable and consistent with prevailing rates. Isabel principally complains that J&J has not submitted third-party affidavits attesting to the reasonableness of these rates. While "a party requesting attorneys' fees [must] adduce evidence, 'other than his own attorneys' affidavits,' to establish 'the prevailing hourly rate,'" affidavits from third-party attorneys "are by no means the only acceptable form of evidence." Sullivan v. Dumont Aircraft Charter, LLC, 695 F. Supp. 3d 173, 191-92 (D. Mass

2023) (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1168 (1st Cir. 1989)). For instance, courts often look to the rates lawyers have received in comparable matters. See Hutchinson, 636 F.3d at 16; Alexander v. Mass. Dep't of Corr., 734 F. Supp. 3d 133, 140 (D. Mass. 2024). A court's approval in 2016 of partner and associate rates for maritime work that were higher than those charged by Attorneys Blatchley and Harshaw in this case provides sufficient evidence that their hourly rates of $300.00 and $250.00 are reasonable. Moreover, Attorneys Blatchley and Harshaw seek fees at an hourly rate lower than the rates their firm ordinarily charges for their work.

J&J also requests attorney's fees for eight other timekeepers with rates ranging from $165.00 to $300.00 per hour. Four of those timekeepers, who charged between $195.00 and $210.00 per hour, were law clerks. The Court deems an hourly rate of $100.00 to be "more reflective of prevailing market rates" for law clerks, Alexander, 734 F. Supp. 3d at 143, which reduces the total award for these timekeepers from $3,720.00 to $1,820.00. As for the remaining four timekeepers, J&J has not identified their positions and, thus, has failed to meet its burden of justifying the reasonableness of their fees. The Court therefore will not award the $3,266.50 in fees incurred by these four timekeepers.

**B. Number of Hours**

Turning to the number of hours billed, the Court must "exclude 'those hours that are "excessive, redundant, or otherwise unnecessary."'" García, 169 F.4th at 27 (quoting Pérez-Sosa, 22 F.4th at 321). Isabel asks the Court to exclude time J&J's counsel dedicated to (1) the pre-litigation administrative proceedings brought by NOAA and a Freedom of Information Act ("FOIA") request to NOAA, (2) a Federal Rule of Civil Procedure 12(c) motion that was never filed, and (3) disputes between the parties over compliance with Local Rules 7.1(a)(2) and 56.1 and a threat of sanctions under Federal Rule of Civil Procedure 11.

Some of Isabel's proposed reductions have merit. The fee-shifting provision in the contract allows a party to recover fees "[i]f it shall be necessary for either [party] to employ an attorney to enforce its rights pursuant to their Agreement because of default of the other party." Dkt. 1-1 ¶ 13. The fees J&J incurred during the NOAA proceedings served to resolve the enforcement action, not to enforce J&J's right to indemnification from Isabel in connection with those proceedings. J&J is therefore not entitled to recover the approximately $2,260.00 in attorney's fees included in its request that related to resolving the NOAA proceedings.[1]

[1] The parties' contract separately provides that "[i]n the event that any actions of the Master subjects [sic] the Vessel or her Owner to any administrative, judicial or criminal penalty, he or she shall indemnify and hold Owner harmless from such penalty and

The Court also eliminates the approximately $3,965.00 in fees J&J's counsel billed to draft the Rule 12(c) motion that was never filed. See Montanez v. Simon, 755 F.3d 547, 555 (7th Cir. 2014); Gierlinger v. Gleason, 160 F.3d 858, 880 (2d Cir. 1998); Gross v. Sun Life Assurance Co. of Can., 320 F. Supp. 3d 240, 245 (D. Mass. 2018).

The Court rejects the remaining reductions proposed by Isabel. It was reasonable for J&J's counsel to submit a FOIA request to NOAA during this litigation and to defend themselves against opposing counsel's threat of Rule 11 sanctions. Moreover, while the Court ultimately declined to resolve the parties' arguments regarding compliance with Local Rules 7.1(a)(2) and 56.1, see John & Jane, 822 F. Supp. 3d at 202-03, J&J reasonably raised these arguments in connection with the summary judgment briefing.

Isabel next contends that the Court should reduce J&J's fee award by 50% to account for "non-core" work. When awarding fees, a court may "set two separate hourly rates for a particular attorney -- one for 'core' tasks like 'legal research, writing of legal documents, court appearances, negotiations with opposing

shall reimburse each of them for such penalties, fines or other expenses or costs." Dkt. 1-1 ¶ 14. J&J does not cite this provision in its motion as the basis for an entitlement to fees incurred to resolve the NOAA proceedings, so the Court does not consider the issue.

counsel, monitoring, and implementation of court orders' and a lower one for 'non-core' tasks, which are 'less demanding,' such as 'letter writing and telephone conversations.'" Pérez-Sosa, 22 F.4th at 327-28 (quoting Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015)). "Non-core work is usually compensated at two-thirds the billing rate approved for core legal work." Alexander, 734 F. Supp. 3d at 142 (quoting Parker v. Swansea, 310 F. Supp. 2d 376, 391 (D. Mass. 2004)). There is, however, no "rigid requirement that a district court employ a core/non-core analysis when adjudicating a fee petition," and a court may instead "employ an across-the-board rate cut" to reflect billing for less demanding tasks. Matalon, 806 F.3d at 639.

Upon review of J&J's counsel's billing records, some entries may reflect non-core work, mainly internal and external correspondences. However, Isabel has not identified the specific entries he contends constitute non-core work, and evaluating J&J's counsel's records is further complicated by their use of block billing where "a single time entry lumped together multiple tasks." García, 169 F.4th at 28. Under these circumstances, the Court applies a global reduction of 20% to J&J's request for attorney's fees to account for both non-core work and block billing. See Dairy Farmers of Am., Inc. v. Bernon Land Tr., LLC, No. 22-cv-10422, 2025 WL 3012877, at *9 (D. Mass. Oct. 28, 2025) (applying a 20% global reduction "to account for the time that [the plaintiff's]

counsel devoted to non-core work and to sanction their use of block billing”).

## II. Expenses

J&J requests the following $2,752.29 in expenses: (1) the $405.00 filing fee, (2) $270.00 for use of an electronic discovery software, (3) $226.14 in fees for three deliveries, and (4) $1,851.15 for Westlaw research. Isabel does not dispute that J&J is entitled to recover the filing fee but argues that the other expenses are not authorized under 28 U.S.C. § 1920 and are excessive.

28 U.S.C. § 1920 does not bar J&J from recovering these expenses. That provision lists the limited costs a court may tax “absent explicit statutory or contractual authorization.” Morales-Figueroa v. Santos, 989 F.3d 58, 60 (1st Cir. 2021) (quoting Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987)); see BRT Mgmt. LLC v. Malden Storage, LLC, No. 17-cv-10005, 2022 WL 20766369, at *6-7 (D. Mass. Jan. 19, 2022); see also Monsanto Co. v. David, 516 F.3d 1009, 1017 (Fed. Cir. 2008) (“28 U.S.C. § 1920 does not set maximum costs around which private parties may not contract.”). Here, the parties’ contract entitles J&J to all “reasonable . . . expenses.” Dkt. 1-1 ¶ 13. The term “expense” refers broadly to “[a]n expenditure of money, time, labor, or resources to accomplish a result.” Expense, Black’s Law Dictionary (12th ed. 2024); see 10 Wright and Miller’s Federal

Practice and Procedure § 2666 (4th ed. 2026) ("'Expenses[]' . . . include all the expenditures actually made by a litigant in connection with the action."). J&J's payments for use of electronic discovery software, delivery fees, and legal research were all expenditures incurred to enforce its rights under the contract.

That said, the Court deems the $226.14 billed for three deliveries to be excessive in the absence of an explanation about the nature of those deliveries and therefore awards only $50.00 in delivery fees. And while case-specific charges for online legal research are generally compensable, see InvesSys, Inc. v. McGraw-Hill Cos., 369 F.3d 16, 23 (1st Cir. 2004), the Court also eliminates the $292.23 in Westlaw fees that appear related to the Rule 12(c) motion that was never filed.

## III. Summary of Award

In summary, the Court imposes the following reductions to J&J's request for $53,421.50 in attorney's fees: (1) $3,266.50 in fees incurred by unknown timekeepers, (2) a lower hourly rate of $100.00 for four law clerks, (3) $3,965.00 in fees related to a Rule 12(c) motion that was never filed, (4) $2,260.00 in fees incurred in connection with the NOAA proceedings, and (5) an additional 20% global reduction to account for non-core work and block billing. These reductions bring the fee award to $33,624.00. The Court also reduces J&J's request for $2,752.29 in expenses to

$2,283.92 to eliminate excessive delivery fees and Westlaw fees related to the Rule 12(c) motion.

**ORDER**

For the foregoing reasons, J&J's motion for attorney's fees and expenses (Dkt. 58) is **ALLOWED** in the amount of $33,624.00 in attorney's fees and $2,283.92 in expenses.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge